FILED
IN CLERKS OFFICE

2021 MAR -8 AM 10: 50

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| UNITED STATES ) | |
| ) | CRIMINAL NO. 1:16-cr-10096-PBS |
| v. ) | |
| ) | February 25, 2021 |
| SHAUN MILLER ) | |

## AMICUS BRIEF IN SUPPORT OF SHAUN MILLER'S EMERGENCY MOTION FOR RELEASE PURSUANT TO THE FIRST STEP ACT

TO THE HONORABLE JUDGE PATTI B. SARIS, MAY IT PLEASE THE COURT:

### PRELIMINARY STATEMENT

This Amicus Brief is in support of Petitioner Shaun Miller's motion for Compassionate Release pursuant to 18 U.S.C. §3582(c)(1)(A) of the First Step Act. I was Shaun's Cellmate and "Bunkie" at MDC Brooklyn, and I am submitting this Amicus Brief because I am shocked that Shaun has not already been released by the Unit Manager at MDC. I was released pursuant to the CARES Act because of my age, but Shaun is actually closer to his release date now (January 8, 2023) than I was, and he has certainly served more than 50% of his sentence. Because Shaun was sentenced to 90 months, he is entitled to 9 months of Home Confinement guaranteed by §3624(g) and everyone is entitled to 12 months of Halfway House and Home Confinement pursuant to §3624(c). Moreover, this Court specifically recommended that Shaun be eligible for the Residential Drug and Alcohol Program ("RDAP") that would have taken a year off his sentence and given him 18 months of Home Confinement and/or Halfway House. Therefore, by any standard, Shaun is late to the door under §3582(c)(1)(B) as well as §3582(c)(1)(A) and the clear message of Attorney General Barr's memo of April 2020 to release prisoners because of the

1

COVID-19 Pandemic. Obviously, there is a big mistake here because Shaun is not only the finest man I met in prison, he is also one of the finest people that I have ever met.

While I was Shaun's Bunkie, we talked about the Bible on a daily basis. In fact, I gave him virtually every book that Thomas Merton ever wrote, and after he read certain sections we would then discuss and compare Thomas Merton's beliefs with famous Buddhist teachers such as Thich Nhat Hanh and the Dalai Lama. Moreover, I wrote the <u>Prisoner of Hope Bible</u> while in prison, so you might say that Shaun was my editor. Please feel free to go on Amazon to purchase the <u>Prisoner of Hope Bible</u>, as all proceeds from the sale go to help incarcerated prisoners get out of jail. *See* <u>https://www.amazon.com/Prisoner-Hope-Bible-Foundation/dp/1723014540</u>. I am proud to say that the person typing this up for me has followed in the steps of people such as Shon Hopwood, the famous Georgetown Law Professor and former bank robber, to get a number of people out of prison. Whereas I wrote many of the motions, my friend typed and submitted all of the briefs that led to over 120 prisoners being released early due to the First Step Act, the CARES Act, and the renewed Second Chance Act. I only mention this to the Court because if I could put the names of all the people in a list in order of the most deserving of early release, Shaun's name would be at the top of the list. He certainly meets the 50% of his sentence served pursuant to the CARES Act, and is obviously within 18 months of release. This Court should order Shaun's immediate release upon reading this Brief.

Shaun was the hardest working person in the elite Cadre Unit at MDC Brooklyn. The reason people leave camps to go to the Cadre is because you are supposed to get a year or two off your sentence and get extra Halfway House time. Obviously, Shaun has received neither despite the fact that he has a great work ethic and helps everyone. In fact, the CO's loved him and there was many a Saturday or Sunday that a CO would have me wake Shaun up because he was the head

of Sanitation. As far as I could tell, unlike anyone else, Shaun was on call 24/7 and never once grumbled about the fact that other people would get out of work or go on sick call and make up excuses while he would always be there to help the CO's with the garbage detail. Additionally, I was there when Shaun learned that the mother of his child and former girlfriend committed suicide. It is absolutely incredible to me in this day and age that Shaun should be in prison rather than being his son's Little League or soccer coach. If we really care about Society, Your Honor should order Shaun's immediate release as the judge did in *United States v. Scparta*, 2020 WL 1910481 (S.D.N.Y. Apr. 20, 2020).

I mention this case because Judge Nathan called the conditions of being in a maximum security facility like MDC Brooklyn and the actions taken by the BOP in response to the COVID-19 Pandemic "Kafkaesque":

> "The Government also revealed that, despite express authority from the Attorney General to do so, the BOP has not and will not consider permitting Mr. Scparta to self-quarantine in his residence for 14 days. Given this dangerous set of conditions and **Kafkaesque approach,** Mr. Scparta presses the Court to grant his still pending motion for compassionate release and order him immediately released on conditions that include a 14-day period of self-isolation in his home. Without any hesitation, the Court concludes that Mr. Scparta is entitled to compassionate release… As Justice Frankfurter warned: "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters*, 335 U.S. 595, 600 (1949)." *Id.* at *1 (emphasis added).

Whatever prison anyone talks to you about, none are as bad as MDC Brooklyn, and from March 29, 2020 to my release in June, we were all in a 24/7 lockdown. I am going to include with this Brief Judge Gorton's formula from *United States v. Macfarlane*, 438 F.Supp.3d 125 (D.Mass. Apr. 14, 2020), because since the time I was there, conditions have only gotten worse. And, for a couple months, we were only let out a few times a week to shower and were hardly ever allowed to use the computer and phone, so it seems nearly impossible that Shaun is able to stay in touch with his son. I would ask you use Judge Gorton's formula that each week in Lockdown is equal to

3

a month in a Camp, where Shaun should be taking RDAP. The only reason Shaun is not in RDAP is because the BOP eliminated RDAP for anyone that had a "gun" mentioned in their case. If Shaun had been allowed to do RDAP at Allenwood or Lewisburg, he would have been home by now. I would also ask you to order Shaun's immediate release just as Judge Nathan ordered the immediate release of the petitioner in *Scparta*, because Your Honor has the ability to do so pursuant to §3582(c)(1)(A) and 28 U.S.C. §2243. I also know that Shaun sent a letter to the warden in early 2020 because I helped write it for him. That letter is attached as Exhibit A, and was sent to the Warden many months ago because not only did my friend type it, I actually walked over to watch Shaun put it in the Cadre mailbox.

Additionally, because Shaun is due to be released January 8, 2023, if he had gotten into RDAP he would have been out already and it was the BOP who changed the rules because he had a gun in his house that was never used. But, under §3642(c)(2), everyone is now guaranteed at least 10% of their sentence on Home Confinement, and under §3624(g) there is now no limit to how much time can be spent in Home Confinement or Halfway House, so Shaun should be sent home immediately as everyone is entitled to up to 12 months of Halfway House in addition to his 9 months of Home Confinement.

Once again, the BOP has established that there is no difference between being at a Camp, a Halfway House, or on Home Confinement, so Shaun is undoubtedly entitled to be sent to Home Confinement now. *See, e.g.,* PS5321.08, written by BOP Director Kathleen Hawk Sawyer over 20 years ago: "A CCC [Halfway House] meets the definition of a penal or correctional facility pursuant to 18 U.S.C. §3621(b)."

Perhaps the best description that Home Confinement is still "imprisonment" under the BOP's custody is Judge Ponsor's famous decision in *Iacoboni v. United States*, 251 F.Supp.2d 1015 (D. Mass. 2003):

> Indeed, the notion of "imprisonment" clearly encompasses conditions of confinement substantially less restrictive than community confinement. For example, §3624(c) authorizes the BOP to "assure that a prisoner serving a *term of imprisonment*" is given the opportunity to serve as much as six months of the final portion "*of the term*" in home confinement. *Id.* (emphasis supplied). In other words, Congress has recognized that an offender may serve a portion of a "term of imprisonment" while living at home, full time.
>
> As the Supreme Court recognized in *Koray*, the critical litmus is whether offenders "always remain subject to the control of the Bureau." *Reno v. Koray*, 515 U.S. 50, 63 (1995). Offenders imprisoned in community confinement are subject to BOP control. They are, as Chief Justice Rehnquist noted, "subject to BOP's disciplinary procedures; they are subject to summary reassignment to any other penal or correctional facility within the system, and, being in the legal custody of BOP, the Bureau has full discretion to control many conditions of their confinement." *Id.* BOP control is the touchstone of "imprisonment," and the BOP exercises complete control over all offenders placed in community corrections. They are imprisoned. Finally, the argument that the BOP, in exercising its Congressionally-bestowed discretion to designate as the "place of the prisoner's imprisonment...any available penal or correctional facility," §3621(b), is, in effect, *failing* to "imprison" the offender when it designates him or her to a community corrections facility simply ignores §3551, which can only be read to include community confinement as a form of imprisonment, the last category of the three "authorized sentences." Thus, as a matter of law, and a matter of common sense, **the argument that community confinement is not a form of imprisonment will not wash.** *Id.* at 1029 (emphasis added).

Therefore, I would respectfully submit that Shaun should be immediately released under the CARES Act to Home Confinement, or immediately release based on Judge Gorton's calculus in *Macfarlane*.

## I.     JUDGE GORTON'S CALCULATION IN *MACFARLANE*

In *United States v. Macfarlane*, 438 F.Supp.3d 125 (D.Mass. Apr. 14, 2020), Judge Gorton recognized the traditional standard that if a prisoner who was assigned to a Camp ended up being sent to a higher security prison or experienced a lockdown, then each week served in the maximum security facility was equal to a month in the camp facility. In this case, Shaun has been imprisoned at the Maximum Security facility at MDC Brooklyn for well over four years, and has spent at least 52 weeks in the COVID-19 lockdown conditions.

Therefore, under Judge Gorton's calculations in *Macfarlane*, Shaun should have an additional 52 months taken off of his sentence and supervised release based on the ratio of one week at MDC Brooklyn being equal to one month off an inmate's sentence if he could have been at Camp as Shaun was clearly able to be. *See Macfarlane* at 127 ("…the Court determines that Macfarlane's two-week confinement in solitary quarantine in a higher security facility *is the equivalent* of two months in the Camp to which he was originally assigned."). Now that Shaun has served almost his entire sentence, there is no reason to keep him locked down in MDC Brooklyn, where the conditions are notoriously horrific and have been exacerbated by the COVID-19 Pandemic and the BOP's lack of preventative measures. Therefore, it is clear from *Macfarlane* that it is up to this Court to deliver the remedy given by Judge Gorton using the formula of one week in a Maximum Security Facility equaling one month at a Camp, Home Confinement, or Halfway House, and release Shaun immediately so he can be with his son and no longer live in the squalor that is MDC Brooklyn.

## II.   SHAUN IS ENTITLED TO AT LEAST 12 MONTHS OF EARNED TIME CREDITS UNDER THE FIRST STEP ACT

Additionally, the First Step Act ("FSA"), which was enacted in December 2018, provided that all prisoners would receive 10 days of Earned Time Credits, and those in a Camp or lower security facility with less of a chance of recidivism would receive an additional 5 days for a total of 15 days per month to be taken off their sentence or the period of Supervised Release. Because of Shaun's status of having the one of the lowest PATTERN scores of anyone at MDC Brooklyn, as well as his impeccable work ethic, after 24 months he is clearly entitled to 12 months off his sentence. Shaun should be entitled to 15 days a month from January 2019 to January 2021 for a total of 13 Months off of his period of Supervised Release. Once again, the BOP has established that there is no difference between being at a Camp, a Halfway House, or on Home Confinement, so Shaun is undoubtedly entitled at least 13 months of Earned Time Credits.

If this Court were to credit Shaun with the 12 months of Earned Time Credits under the First Step Act in addition to the 9 months of Home Confinement guaranteed by §3624(g) and Judge Gorton's calculations in *Macfarlane*, he should be sent home immediately.

## CONCLUSION

Shaun deserves the same considerations as the defendant in *Macfarlane*. I submit this Amicus Brief to respectfully ask the Court to credit Shaun with the 12 months of Earned Time Credits under the First Step Act in addition to the 9 months of Home Confinement guaranteed by §3624(g) and Judge Gorton's calculation under *Macfarlane*, and order his immediate release from MDC Brooklyn.

Respectfully submitted,

/s/ Gideon Hope
Gideon Hope
Prisoner of Hope Foundation
35 Tower Lane
Avon, CT 06001