FILED
IN CLERKS OFFICE

FROM: 99741038
TO:
SUBJECT:
DATE: 08/22/2021 08:49:13 PM

2021 AUG 25 PM 12: 24

U.S. DISTRICT COURT
DISTRICT OF MASS.

August 22, 2021

Dear Your Honor:

I am writing in regards to your July 29, 2021 decision to deny my Motion for Compassionate Release, pursuant to the First Step Act, based solely on my criminal history and the nature of my instant offense. I must say that I was a bit shocked to see that you conceded with the government's accusations of me being a dangerous threat to the community. With all due respect, Your Honor, I refuse to believe such lies. If I were to allow myself to fall victim to such falsehoods, and to adopt such a negative and incorrect perspective of myself, by all means I would indeed be going back home to to continue on with that disgusting, evil, and immoral lifestyle I was once a slave to for so many years.

But the truth is, Your Honor, I am not a danger to the community. If I were a danger to the community, I would not be at a minimum-security camp. If I were a danger to the community, I would not have been going out into the community of Brooklyn, New York for the past two years to work. If I were a danger to the community, the Bureau of Prisons would have determined me one a long time ago. The truth is, I have more than proven that I in fact am not a threat to the community. The truth is, I have five years worth of perfect prison conduct to back that claim up. The truth is, there are not many inmates across the nation who can say the same for themselves. The United States Prison System is far from a safe and "squeaky clean" environment. The United States Prison System is flooded with drugs and violence. The truth is, an inmate can very likely enter the United States Prison System and leave worse off than he was on the day he came in. The truth is, the United States Prison System, in and of itself, does very little, if anything, to rehabilitate a hardened convict.

I believe the saddest part of your decision, Your Honor, is not the fact that I will now have to remain under inhumane prison conditions for the next four months until I am released in January of 2022. The saddest part of your decision is the overall message that is being sent to the public, myself, and other offenders alike as a result thereof. And that message is this: That when a Career Offender and an Armed Career Criminal provides assistance to the government that leads to the conviction (s) of other defendants, it is quite alright to reduce that individuals 15 year mandatory minimum sentence by 50% and release him back into the community seven and a half years early, even if that individual does absolutely nothing to rehabilitate himself during his incarceration. Yet when that same individual's life is in immediate danger due to a deadly virus and his extreme susceptibility to it at the prison he is currently being housed, and that same individual has taken extraordinary measures to ensure that he be transformed into a positive, non-threatening, productive member of society while trapped in the midst of a chaotic, negative, drug and violence-filled prison environment, all of the sudden that same individual's criminal history and the nature of his crime now prohibit him from receiving a sentence reduction.

If this is the case, Your Honor, I must ask: What is the purpose of incarceration? Is it designed to merely punish a man? Is it meant to simply take an individual out of society for a period of time and then throw that same individual right back out into the community once his "time is up"? Or is the purpose of incarceration in the United States of America designed to make sure that a person is actually corrected, that is, his old nature is no longer existing, and he has taken on a completely new and healthy one? Is rehabilitation for a troubled man no longer the goal here? If anything, Your Honor, the fact that I am a Career Offender and an Armed Career Criminal should make my current, evidence-based, rehabilitation even more extraordinary. Statistically speaking, all the odds were against me from the moment I came to prison. Whereas this is my third incarceration, this ugly cycle of release and recidivism should have overtaken me by now. Statistically speaking, I should be at a maximum security penitentiary behaving like a wild animal at this point. Statistically speaking, I should have just laid down a long time ago and just accepted that a drug dealing, firearm carrying criminal is just "who I am."

The government would like for me to believe such lies. They would love to keep me mentally confined to such a dark box. That is why they gave absolutely no recognition to any of my instant institutional progress in their opposition to my motion, which, by the way, was so clearly evident in all the exhibits I provided along with such. Instead, the government chose to focus solely on the negative, that is, my past. It's no wonder, then, that so many Americans such as myself have kept returning back to prison over, and over, and over again. The message being sent by the judicial system to troubled men and women, to be quite plain, is utterly defeating. It is filled with absolute hopelessness. It says to the offender, "Inmate, you are nothing. You will always be nothing. You have never been anything since you were a child, and you never will be anything. Your past defines you. You are a criminal and nothing more. Now, embrace it. Because THIS is your true identity."

With the utmost respect for the law, Your Honor, I still cannot accept that message. I strongly believe that the Court has erred in not granting a sentence reduction here by basing its order on my past conduct rather than considering my growth and rehabilitation since incarceration. I contend that the Court has improperly evaluated the Section 3553 (a) factors by considering them in regard to the man I was at the time of sentencing rather than the man I presently am today. Other courts have in fact ruled that evidence of post-sentencing rehabilitation is likely the most critical of core considerations for the court in Section 3553 (a) proceedings. In Pepper v. United States, 562 U.S. 476, 131 S.ct. 1229, 1241, 179 L. Ed. 2d 196 (2011), the Court

emphasized the important nature of post-sentence rehabilitation, stating that "there would seem to be no better evidence than a defendant's post incarceration conduct." Id. Indeed, the Court continued, "Post-sentencing rehabilitation may also critically inform a sentencing judge's overarching duty under Section 3553 (a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in Section 3553 (a)(2)." Id. at 1242. See e.g. United States v. Millan, 91-CR-685 (LAP), 2020 U.S. Dist. LEXIS 59955, 2020 WL 1674058, at *9 (S.D.N.Y. Apr. 6. 2020) (granting a sentence reduction under Section 3582 (c) to a defendant who ran a drug-trafficking organization, given that "[ the defendant ], in the face of a life sentence, assumed a positive outlook and attitude towards life, sought to improve himself to the utmost extent possible and was motivated to do so notwithstanding his circumstances").

Your Honor, if you have taken the time to read this letter, ma'am, then I trust that these words of truth have spoken to your heart. Something is wrong with this system, Your Honor. Now, I completely understand if it is not within your power to release me because of my criminal history and instant offense. If the 3553 factors prohibit you from doing such, then so be it. That's the law. But I believe that it IS within your power to release me, despite my "past", and therefore I hereby respectfully ask you, Your Honor, to seriously reconsider my Motion for Compassionate Release pursuant to the First Step Act and release me to strict supervision with an ankle monitoring bracelet under home confinement for the remainder of my sentence.

P.S. I have still yet to be vaccinated by the medical staff at MDC Brooklyn, against my will.

Respectfully submitted,

Shaun Miller, Pro Se
MDC Brooklyn
P.O.BOX 329002
Brooklyn, NY 11232